UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.10-62411-CIV-DIMITROULEAS/Snow

WYNMOOR COMMUNITY COUNCIL, INC., et al.,

       Plaintiffs,

v.

QBE INSURANCE CORPORATION,

       Defendant.
_____/

## ORDER

THIS CAUSE is before the Court on Defendant QBE Insurance Corporation's (QBE) Motion to Compel Production and Forensic Examination (DE 59), which was referred to United States Magistrate Judge Lurana S. Snow.

### I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs Wynmoor Community Council, Inc., et al. filed a Complaint alleging breach of an insurance contract against Defendant in Broward County, Florida on October 22, 2010. (DE 1-4) On December 10, 2010, the matter was removed to this Court. (DE 1) Plaintiffs' Corrected Fourth Amended Complaint claims that they are entitled to payment for losses sustained as a result of damage caused by Hurricane Wilma on October 24, 2005. (DE 67)

Defendant's motion arises from its Second Request for Production which it served on October 14, 2011. (DE 59, p.2) A number of the requests seek the production of documents and/or data from electronic media (including hard drives, floppy drives, etc. of computers).[1]

---

[1] These requests include No. 3 (recordings of meetings), No. 4 (recording of meetings since January 1992), No. 9 (maintenance and repair), No. 10 (maintenance and repair since January 1992), No. 13 (estimates supporting proof of loss), No. 14 (reasons for changing insurance coverage), No.

Defendant asserts that Plaintiffs failed to respond to its request other than to seek more time on October 28, 2011, [2] and that owing to Plaintiffs' failure to respond to the Second Request for Production, any objections should be waived.

Defendant's motion also seeks a forensic examination of Plaintiffs' computer systems. As grounds Defendant cites Plaintiffs failure to produce a single piece of electronically stored information (ESI), and their "continued, and recently amplified, hard-copy document shredding campaign." (DE 59, p.5) Additionally, Defendant contends that a planned "change out" of the Plaintiffs' computer system risks loss of data. Id. at p. 6. Defendant suggests the Court adopt a collection and review protocol similar to that utilized by the Court in Bank of Mongolia v. M &

---

15 (building components), No. 16 (building components since January 1992), No. 17 (payments made for damages), No. 21(hurricane damage of building components), No. 22 (hurricane damage of building components since 1992), No. 23 (condition of building components before or after 2004-2005 hurricanes), No. 24 (condition of building components before or after 2004-2005 hurricanes since 1992), No. 25 (damage to building components before or after 2004-2005 hurricanes, No. 26 (damage to building components before or after 2004-2005 hurricanes), No. 30 (communication to unit owners regarding maintenance/repairs), No. 31(communication to unit owners regarding maintenance/repairs since January 1992), No. 46 (financial records), No. 47 (financial records since 1992), No. 50 (e-mails regarding maintenance/repairs), No. 51 (e-mails regarding maintenance repairs since January 1992), No. 52 (electronic media containing e-mails regarding maintenance/repairs), No. 53 (electronic media containing e-mails regarding maintenance/repairs since January 1992), No. 54 (e-mails regarding 2004-2005 hurricane damage), No. 55 (electronic media containing e-mails regarding 2004-2005 hurricane damage), No. 56 (e-mails regarding loss or damage), No. 57 (e-mails regarding loss or damage since January 1992), No. 58 (electronic media containing e-mails regarding loss or damage), No. 59 (electronic media containing e-mails regarding loss or damage since January 1992), No. 60 (e-mails regarding insurance claims), No. 61 (e-mails regarding insurance claims since January 1992), No. 62 (electronic media containing e-mails regarding insurance claims), No. 63 (electronic media containing e-mails regarding insurance claims since January 1992), and No. 72 (website postings regarding damages or maintenance/repairs). (DE 59, p.3-4)

[2] Evidently, Defendant served a first request for production of documents in April of 2011 which also sought electronically stored information. The Court notes that although Defendant complains about the sufficiency of the Plaintiffs' responses in an e-mail attachment to this motion, (DE 59-3), it has not moved to compel a better response to those requests.

P Global Financial Services, Inc., 258 F.R.D. 514 (S.D. Fla. 2009). The costs of the forensic data collection would initially be borne by the Defendant;[3] the Court to appoint an expert to collect the data.[4]

Plaintiffs' response to the motion asserts that Defendant's representatives have had unfettered access to all of its documents and data since November 2005 and continuing to the present. Plaintiffs contend that their response to Defendant's first Request for Production objected to the production of ESI as unreasonably duplicative of the hard copy documents they were willing to provide. The only difference between the first and second request for production is the inclusion of the phrase "from January 1992 through the present" added to identical requests for documents in the first request. In any case, Defendant was allowed unrestricted access to "every scrap of records" maintained by Plaintiffs starting on October 27, 2011. (DE 68, p.3) Plaintiffs attached a response to Defendant's Second Request for Production which continues to object to the production of electronic discovery as unreasonably duplicative as well as unduly burdensome. (DE 68-3) They contest the probative value of the ESI Defendant seeks, and further assert that the cost and burden they would suffer "far outweighs any speculative benefit from any discoverable information that might exist only in electronic form - especially since Defendant offers no evidence that any discoverable ESI exists." (DE 68, p. 2) Finally, Plaintiffs point to the fact that they do not maintain the e-mail correspondence for their employees on their servers[5], and that they suffered a massive loss of information as a result of Hurricane Wilma.

---

[3] Defendant would reserve the right to shift the expense to Plaintiffs as a sanction under Rule 37 depending on the result of the forensic examination.

[4] Defendant suggests Robert Moody, J.D. and attached his affidavit and credentials to the motion.

[5] Of fifty employees, approximately 15 have work related e-mail accounts. (DE 68-5)

3

Defendant denies that it was provided unfettered access to Plaintiffs' documents in 2005-2006. (DE 75) In fact, Defendant claims that the only documentation it received from Plaintiffs during the claim investigation was the public adjuster's damage estimate. Id. All of its requests for documentation at that time were denied. Id. It also denies that it is seeking the same documentation now that it was seeking in connection with the claim investigation in 2006.

Defendant points to the affidavit and deposition testimony of John D. Holthausen, Plaintiffs' Chief Information Officer, in support of its contention that the ESI sought is not duplicative. Mr. Holthausen testified that not all files on the server exist in paper format. (DE 75-2, p. 76) Only data required to be preserved for seven years by law would be preserved as a paper copy. Id. Mr. Holthausen testified that he does not print out his own e-mails and there is no policy in place requiring Plaintiffs' other employees to retain their e-mails. Id. at p.121

Defendant also learned that Mr. Holthausen has no experience in computer forensics, (DE 75-2, p. 121) and has not made any effort to retrieve ESI from Plaintiffs' computers. Id. at pp. 52, 71, 78, 95, 111, 116. In fact, Plaintiffs lack the software to run a keyword search and would need to purchase a third party-product to search the server. Id. at 118. Mr. Holthausen claims that the hard drive containing the maintenance department work orders crashed sometime during Hurricane Wilma, although none of the other hard drives suffered the same fate. Id. at pp. 102-103. His attempt to recover the data was unsuccessful, and he physically destroyed the drive. Id. at 103-107. He concedes that recovering the data wasn't a high priority at the time. Id. He was not informed about this lawsuit until a couple of months ago, until recently was unaware of any need to preserve documents, and has not changed any of his preservation procedures since learning of the lawsuit. Id. at p. 127. Backups consist of daily overwrites of what was backed up the day before. Id. at p. 79.

Defendant asserts that although it requested the on-site document inspection at

4

Wynmoor on October 12, 2011, Plaintiffs did not grant access until October 27, 2011. Only minimal work orders from prior to 2004 have been produced, and these pre-Hurricane Wilma work orders were found in the records of the finance and not the maintenance department.[6] Defendant has also learned through a subpoena to Shred-It, a document shredding service, that Plaintiffs shredded documents regularly from five consoles on a monthly basis at a cost ranging from between $64.00 and $108.00. (DE 58-1)   However, in October of 2011, Plaintiffs' shredding cost exceeded $1,000.00 for shredding which occurred on October 12 and again on October 21, 2011.[7]   Id. Defendant points to deposition testimony of Keith Arnold, Plaintiffs' CFO and Records Custodian to illustrate that numerous boxes of documents may have been shredded without his authorization. (DE 64-4, pps. 58-73 and 83-87) In particular, Mr. Arnold testified that he did not authorize the shredding that took place on October 12. (DE 64-4, p. 83) He also testified that he would never authorize the shredding of documents such as maintenance department work orders as these types of documents are kept indefinitely. Id. at pp. 67-69.

The Defendant contends that the testimony of Mr. Holthausen, coupled with the unusual volume of document shredding that apparently took place just prior to its on site inspection provide ample grounds for granting its request for a forensic examination of Plaintiffs' computers. Defendant proposes that Robert Moody, an independent forensic examiner, or some other appropriately credentialed independent examiner, be retained for this purpose.

During the time that this motion was being briefed, this Court entered an order

---

[6] According to Jack Kubasek's deposition testimony, work orders would be routinely maintained in the maintenance department. (DE 59-4, pp. 57-60)

[7] On October 12, Plaintiffs' shredded 30-35 bags/boxes of documents, and on October 21, 100 bankers boxes and file size boxes of documents.

directing Plaintiffs to preserve documents that relate to or concern the insured properties in this case. (DE 66)  This order encompassed hard copy and ESI. Id. The Court instructed the Plaintiffs to not alter, permanently delete or make irretrievable any existing ESI, data or metadata on their computer systems, including ESI which may exist on computer systems in use prior to the electronic surge in 2005.  Id.  It rejected Defendant's proposal for the immediate production of a mirror image of the Plaintiffs' computer at that time, but noted that the necessity for a forensic examination would be addressed in the context of the instant motion to compel. Id.

## II.  ANALYSIS

The Federal Rules of Civil Procedure set forth the scope and limits of discovery. Under Rule 26(b),

> "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense...[that] is relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence..., [however] the court must limit the frequency or extent of discovery otherwise allowed  by these rules...if it determines that: (i) the discovery sought is unreasonably cummulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues...."

Fed.R.Civ.P. 26(b).  The Advisory Committee notes to Rule 26 are instructive.  They make clear that a broad search for facts, and indeed "fishing" for evidence is permitted. Adv. Com. Notes, 1946 Amendment, Rule 26, Fed.R.Civ.P.  "Of course, matters entirely without bearing either as direct evidence or as leads to evidence are not within the scope of inquiry, but to the extent that the

examination develops useful information, it functions successfully as an instrument of discovery, even if it produces no testimony directly admissible." Id. (Citations omitted.)

It is settled that, electronically stored information is discoverable under Rule 34(a) of the Federal Rules of Civil Procedure. "During discovery, the producing party has an obligation to search available systems for the information demanded." McPeek v. Ashcroft, 202 F.R.D. 31, 32 (D.D.C., Aug. 1, 2001). Deleted computer files, whether e-mails or otherwise, are likewise discoverable. Bank of Mongolia v. M&P Financial Services, Inc., 258 F.R.D. 514, 519 (S.D. Fla. 2009).

Rule 34 of the Federal rules of Civil Procedure provides that "[t]he party to whom [a]... request [to produce] is directed must respond in writing within 30 days after being served...," unless the parties stipulate to a shorter or longer time under Rule 29 or the court orders otherwise. Fed.R.Civ.P. 34(b)(2)(A).  "[T]he Advisory Committee notes to the 1970 Amendment [to Rule 34] state that this subdivision 'is essentially the same as that in Rule 33....' Thus as a general rule, when a party fails to timely object to...production requests...the objections are deemed waived." Pitts v. Francis, 2008 WL 2229524 *2 (N.D. Fla., May 28, 2008) (citations omitted).  However, the Court can excuse an untimely response for good cause. Bank of Mongolia v. M&P Global Financial Services, Inc., 258 F.R.D. 514, 518 (S.D. Fla. 2009).

If a party fails to answer a request for production, the party seeking the discovery may move for an order compelling a response under Fed.R.Civ.P. 37 (a)(2).  Motions to compel are committed to the sound discretion of the court. Commercial Union Ins. Co. v. Westrope, 730 F.2d 729, 731 (11th Cir. 1984).   On a motion to compel the production of electronically stored information, a responding party need not provide "information from sources that the responding party identifies as not reasonably accessible because of undue burden or cost." U & I Corporation

7

v. Advanced Medical Design, Inc., 251 F.R.D. 667,674 (M.D. Fla. 2008). The responding party has the burden to make this showing, however, even "if the responding party succeeds, the court may nevertheless order the discovery if the requesting party shows good cause." Id.   The court must consider "whether the burden or expense of the proposed discovery outweighs the likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake...and the importance of the proposed discovery in resolving the issues." Id.

Plaintiffs served their response to the Second Request for Production with their response to the motion to compel nearly three months after they were served.[8] According to e-mail correspondence dated October 28, 2011, Plaintiffs claimed to be "diligently working on the electronic material"and requested more time. (DE 59-2)  Subsequently, Defendant's learned from Plaintiffs' Chief Information Officer, John Holthausen, that at least as of February 1, 2012, he had made no effort to retrieve any ESI from Plaintiffs' computers. (DE 75-2, pp. 52, 71, 78, 95,111, 116) Plaintiffs' response to the Second Request for Production objects to every request for electronic discovery as unreasonably duplicative as well as expensive and burdensome "taking into account the needs of the case, the amount in controversy, the Plaintiff's resources as non-profit condominium associations and the lack of value of the electronic discovery in resolving the issues." (DE 68-3) Plaintiffs also assert that the Second Request for Production is essentially identical to the First Request for Production with the addition of larger time frames in the requests. Plaintiffs claim to have served objections to the First Request in June of 2011. (DE 68, p.4) The Court notes that the First Request was apparently served on the Plaintiffs on April 15, 2011, (DE 59-3) meaning that

---

[8] Defendant's Second Request for Production was served on October 14, 2011. Plaintiffs' written response was served with its Response to Defendant's Motion to Compel on January 11, 2012.

Plaintiffs' response was outside of the 30 days required by Rule 34.

The Court finds that the Plaintiffs' response to Defendant's Second Request for Production was untimely. Other than requesting more time to work on the ESI on October 28, 2011, Plaintiffs apparently did nothing until faced with a motion to compel. Indeed, it appears that Plaintiffs undertook no efforts to produce ESI responsive to Defendant's discovery request. Plaintiffs have not demonstrated good cause for their late response. Their objections are therefore deemed waived.

Moreover, even if Plaintiffs' objections were timely, their objection that the ESI would be duplicative and unduly burdensome in light of the needs of the case is unsupported by the evidence presented. The Plaintiffs are seeking damages arising to their properties from the Defendant's alleged breach of an insurance contract. They are forty-six condominium associations whose combined losses could be substantial. Mr. Holthausen testified that not all of Plaintiffs' ESI would necessarily be found in hard copy format. Additionally, Plaintiffs have no policy in place for generating hard copies of e-mails between employees, or any e-mail policy whatsoever. Further, in light of the evidence of an unusually large spate of document shredding, some of which may have been unauthorized by Plaintiffs' CFO, there is at least the possibility that hard copy evidence germane to this litigation may have been destroyed that would not otherwise be available to the Defendant absent access to ESI stored in Plaintiffs' computer systems. For example, ESI relating to work orders pre-dating Hurricane Wilma could prove relevant to the condition of Plaintiffs' properties prior to the storm. Despite Keith Arnold's testimony that he would never authorize the destruction of maintenance work orders, Defendant alleges that very few pre-Hurricane Wilma work orders have been produced in hard copy. Therefore, responsive ESI stored on Plaintiffs' computers would not necessarily be duplicative of the hard copy discovery the Plaintiffs have already provided

in this case.  Finally, Plaintiffs have evidently made no efforts to identify ESI, deleted or otherwise, responsive to Defendant's request for production   Although, according to the Plaintiffs' CIO,  they presently lack the capability to undertake a search of their computer system for responsive ESI, this does not relieve them of their discovery obligation.

Defendant requests the court order forensic imaging in this case.  It contends that Plaintiffs have produced no ESI whatsoever, and  a forensic examination may uncover electronic copies of recently purged hard copy documents. A forensic image, otherwise known as a "mirror image"  will "replicate bit for bit sector for sector, all allocated and unallocated space, including slack space, on a computer hard drive." Bennett v. Martin, 186 Ohio App.3d 412, 425 (10th District, Nov. 24, 2009), citing, Balboa Threadworks, Inc. v. Stuckey,  2006 WL 763668 *3 (D. Kan., Mar. 24, 2006), quoting, Communications Ctr., Inc. v. Hewitt, 2005 WL 3277983  *1 (E.D. Cal., Apr. 5, 2005).  A mirror image "contains all the information in the computer, including embedded, residual, and deleted data." Id. citing, Ferron v. Search Cactus, L.L.C., 2008 WL 1902499,  *3, fn. 5 (S.D. Ohio, April 28, 2008).  A Court must be mindful of the potential intrusiveness of ordering forensic imaging, however.  Id.  Before compelling such imaging the court  must weigh inherent privacy concerns against its utility.  Id., citing, John B. v. Goetz, 531 F.3d 448, 460 (6th Cir., Jun. 26, 2008).  The Court should consider "whether the responding party has withheld requested information, whether the responding party is unable or unwilling to search for the requested information, and the extent to which the responding party has complied with discovery requests." Id. citing, Henderson v. U.S. Bank, N.A., 2009 WL 1152019  *2 (E.D. Wis. Apr. 29, 2009); Bianco v. GMAC Mtg. Corp., 2008 WL 4661241  *2 (E.D. Pa., Oct. 22, 2008); Williams v. Massachusetts Mut. Life Ins. Co., 226 F.R.D. 144, 146 (D. Mass., Feb. 2, 2005).  "When a requesting party demonstrates...the responding party's failure to produce requested information, the scales tip in favor of compelling forensic

imaging." Id. at 426 citing, White v. Graceland College Center for Professional Development & Lifelong Learning, Inc., 2009 WL 722056 *7 (D. Kan. Mar. 18, 2009); Diepenhorst v. Battle Creek, 2006 WL 1851423 *3 (W.D. Mich. June 30, 2006); In re Weekly Homes, L.P., 52 Tex. Sup.Ct.J. 1231 (Tex., Aug. 28, 2009).

  Jack Kubasek, Plaintiffs' Assistant Administrator testified in deposition that the Plaintiffs' work order system has always been maintained on the computer system. (DE 59-4, pp. 57-60) Hard copies are also maintained in the maintenance department, and then in storage. Id. at pp. 66-67. Plaintiffs assert that the drive containing all of their pre-Hurricane Wilma maintenance work orders in electronic format crashed during the hurricane and therefore, there are no work orders in electronic format predating the storm in its computer system. According to John Holthausen's affidavit, this data is unrecoverable. However, he concedes that the recovery of this data wasn't a high priority to him in the months immediately following the storm, nor is he an expert in computer forensics. Plaintiffs also claim that only a few of its employees maintain work related e-mail accounts, and it has no policy regarding saving these e-mails on its servers.

  It would appear that Plaintiffs are either unwilling or unable to conduct a search of their computer systems for documents responsive to Defendant's discovery requests. In light of the foregoing, the Court believes that a forensic examination of Plaintiffs' computers is warranted. See, Henderson v. U.S. Bank, N.A., 2009 WL 1152019 (E.D. Wis. Apr. 29, 2009). Although Mr. Holthausen is of the opinion that the work orders in electronic format pre-dating Hurricane Wilma are unrecoverable, he is not a forensic expert by his own admission. Furthermore, there may be other documents contained on Plaintiffs' computer system that are responsive to Defendant's second request for production. There is no way to know for sure because according to Mr. Holthausen, he was unaware of this lawsuit until a few months ago and he has not made any effort to retrieve ESI

in response to Defendant's discovery requests. The Plaintiffs' properties are extensive and the potential damages in this case considerable. Defendant is entitled to employ the discovery process to assist in preparing its defense.

Mindful of the potential intrusiveness of a compelling a forensic examination, the Court will employ a collection and review protocol as outlined in Bank of Mongolia. The Court is aware that Plaintiffs are non-profit and acknowledges that this procedure is likely to be costly. Therefore, the Court sets forth the following procedure:

1. An independent computer expert shall be appointed by the Court and shall mirror image Plaintiffs' computer system. (To the extent it is possible, the independent expert shall conduct his examination in a manner that minimizes the disruption to the operation of Plaintiffs' business.)

2. The parties have up through and including March 12, 2012, to meet and confer regarding their designation of an independent computer expert. If the parties cannot agree, on or before March 15, 2012, each party shall submit its recommendation to the Court, and the Court will select the expert.

3. The appointed expert shall serve as an Officer of the Court. Thus, to the extent that this computer expert has direct or indirect access to information protected by attorney-client privilege, such disclosure will not result in any waiver of the Plaintiffs' privilege.

4. The independent expert shall sign a confidentiality order. Additionally, the expert shall be allowed to hire other outside support if necessary in order to mirror image the Plaintiffs' computer system. Any outside support shall be required to sign the same confidentiality order.

5. The expert shall mirror image the Plaintiffs' computer system.

6. The Defendant shall provide a list of search terms to the Court to identify responsive documents to Defendant's document requests on or before March 15, 2012. After

Defendant has submitted the search terms to the Court, Plaintiffs shall have 5 days to submit their objections to the Court regarding any of the search terms, which the court will rule upon. The Court will provide the search terms to the independent expert.

7. Once the expert has mirror imaged the Plaintiffs' computer system, the expert shall search the mirror image results using the search terms. The results of the search terms and an electronic copy of all responsive documents shall be provided to the Plaintiffs and to the Court.

8. The Plaintiffs shall review the search term results provided by the independent expert and identify all responsive documents. The Plaintiffs shall either produce all responsive documents to the Defendant or identify those responsive documents not produced on a privilege log to the Defendant within 20 days of the date that the Plaintiffs receive the search term results from the independent expert. Any privilege log produced shall comply strictly with the Local Rules for the Southern District of Florida.

9. Defendant shall pay for all fees and costs of hiring the independent expert at this time. However, if at a later time there is evidence of the Plaintiffs improper deletion of electronic documents or any other associated improper conduct, the Court will revisit this issue and consider charging the Plaintiffs for the fees and costs of the independent expert or imposing the fees and costs on the parties in a duly appropriate apportioned manner.

10. The independent expert shall provide a signed affidavit detailing the steps he or she took in mirror imaging the Plaintiffs' computer system and searching the mirror image for the search terms within 5 days of providing the Plaintiffs and the Court with the results of the search for search terms in the mirror image.

### III. <u>CONCLUSION</u>

Based on the foregoing, and with the Court being advised, it is hereby

ORDERED AND ADJUDGED that Defendant's Motion to Compel Production and Forensic Examination is GRANTED. The Court directs the parties to comply with all requirements and deadlines set forth in this Order.

DONE AND ORDERED at Fort Lauderdale, Florida, this 5th day of March, 2012.

*[signature]*
LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:

All Counsel of Record